UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6211-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,
vs

THOMAS NAROG and GHANDI JABER,

    Defendant.
_____/

FILED by _____ D.C.
AUG 10 2000
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## DETENTION ORDER

Pursuant to Title 18, U.S.C. § 3142(f), on August 8, 2000, a hearing was held to determine whether the Defendants, THOMAS NAROG and GHANDI JABER, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of these Defendants as required and the safety of any other person and the community. Therefore, it is hereby ordered that the Defendants, THOMAS NAROG and GHANDI JABER, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The Defendants are charged with conspiracy and possession with intent to distribute pseudoephedrine. Therefore Defendants are charged with a narcotics offense. 18 U.S.C. § 3142(g)(1).

2. The weight of the evidence against the Defendants is substantial. The Defendants and others agreed to distribute pseudoephedrine, a precursor used to manufacture methamphetamine. In September, 1999, Narog received the precursor, using his

pharmaceutical company, a company licensed by DEA to domestically receive and distribute the controlled substance. Narog purchased the chemical knowing it would be used to manufacture methamphetamine. Ghandi Jaber served as a broker/distributor for the precursor. Jaber supervised the loading and unloading of the chemical from Narog's warehouse. The chemical was transported by various co-conspirator, to the western United States where it was manufactured into methamphetamine. The government's evidence is based upon government undercover agents' contact with co-defendants, surveillance of these Defendants and records.

On March 27, 2000, both Defendants were surveilled loading and transporting the precursor. The delivery took place at a local Dunkin Donuts. A seizure of 42.5 lbs. Of methamphetamine and $95,000 in U. S. currency followed in California. On April 4, 2000, the Defendants again loaded large quantities of the precursor and transferred it to a co-defendant. The co-defendant delivered it and expressed concern over the earlier seizure. That co-defendant was speaking to an undercover agent. Subsequently, 2,200 gross pounds of the controlled substance and $25,000 was seized in California. On April 27, 2000, agents again observed these two Defendants loading the chemical into a van leased by a co-defendant. Again that chemical was delivered by co-conspirators to a "meth" lab in California. Agents there seized $500,000 in drugs being processed. On June 1, 2000, agents again observed these two Defendants and others at Narog's pharmaceutical company. Two co-defendants shipped 200 boxes of precursor to California. Later that day, co-defendants were observed delivering precursor to a local residence. Mr. Jaber was observed around that residence over the next several days and conducted counter-surveillance. A search warrant was executed at the residence. The agent observed that pills (precursor) were being repackaged at that residence. Some 1000 pills were seized.

By way of comparison, Pfizer Pharmaceutical purchases 19 million similar pills (pseudoephedrine) in an 8 month period. Narog purchased 19 million in a 3 month period of time. None of the co-defendants who received Narog's pills are employed by pharmaceutical companies, but claim to work at Qwick Mart or 7-11 type stores.

During surveillance, Mr. Jaber was observed using a key and access code to a local warehouse rented by Narog which was used to store precursor chemicals. Mr. Narog was questioned by compliance agents for DEA and he claimed that no one other than himself, the licensee, had access to the storage facility. Narog also denied selling the precursor to domestic purchasers. Narog falsely claimed his shipments were all foreign, to Israel. At that time he was not licensed to ship in foreign commerce. He was in the midst of applying for the requisite foreign licenses. Narog also lied to agents when he claimed to have only one warehouse. In fact, he had leased two other warehouses where 874 boxes of precursor was found. 874 boxes of precursor has a value of 3.7 million dollars when manufactured into "meth."

One co-defendant has made post-arrest statements implicating both of these Defendants. 18 U.S.C. 3142(g)(2).

3. The pertinent history and characteristics of the Defendants are as follows: The Defendant, Narog, is a United States citizen and recently traveled to the Bahamas and Hong Kong. He has a daughter in Florida. His two siblings reside in Ohio. He owns Seaside Pharmaceuticals and has used it for one year to further this illegal activity. Seaside Pharmaceuticals is solely owned by Narog and has only recently (1998) begun operating as a DEA registered dealer of controlled substances. Narog previously worked as a loan officer for a mortgage company for ten years. He owns a $300,000 home in Ft. Lauderdale and two other pieces of real property. Additionally, he has $64,000 in cash. He has no prior criminal

record and denies substance abuse.

Mr. Jaber is an Israeli national and has been in the United States since 1989. He lives locally with his wife. He is on federal probation for bank fraud. Mr. Jaber gave a post-arrest statement claiming to be only a translator for Narog and denied illegal activity.

Jaber told arresting agents he works at a local convenience store, earning $2,000 per month, but he has monthly expenses of $900 for rent and $1000 for cell phone use. According to Jaber's statement to Pretrial Services, he owns a restaurant which he is renovating and is working 60 hours per week and earns $1,600 per month and his wife earns $2,000 per month. He advised pretrial services he is a partner in a local Qwick Stop store, but has taken no money in the past four months. According to Jaber's wife, his wealthy parents give them $50,000 a year. Mr. Jaber is in good health and denies substance abuse. He has three prior arrests and one federal bank fraud conviction. He was on supervised release when he committed the offense.

DEA's surveillance of Jaber over 4 ½ months revealed that he occasionally went to the Qwick Stop and the Delray Beach restaurant, but he did not appear to be employed full-time with either activity. 18 U.S.C. §3142 (g)(3)(A) and (B).

Based on the fact that Jaber is a national of Israel, owns no real estate in the United States, recently traveled to Israeli and is presently on supervised release, the undersigned believes that he would not appear if released on bond prior to trial. Based upon the business ties, Narog has developed with the co-defendant, foreign nationals, all of whom have ties to the Middle East, and the amount of jail time he faces, the Court likewise finds he would not appear if released on bond prior to trial. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. Both Defendants engaged in ongoing trafficking in a precursor, knowing it would be used to manufacture "meth." Accordingly, the Defendants constitute a danger to other

4

persons or the community. 18 U.S.C. § 3142(g)(4).

5. The Court specifically finds that there are no conditions or combination of conditions which reasonably will assure these Defendants' appearances as required and the safety of any other person and the community. 18 U.S.C. § 3142(e).

Based on the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that these Defendants present a danger to the community. Based on the above findings of fact, which were supported by the preponderance of the evidence, the Court has concluded that these Defendants present a risk of flight.

The Court hereby directs:

1. That the Defendants be committed to the custody of the Attorney General for the confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the Defendants be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendants are confined deliver the Defendants to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 10 day of August, 2000 at West Palm Beach, Florida.

LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Daniel T. K. Hurley
Counsel of Record