NIGHT BOX FILED

AUG 30 2000

CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6211-CR-HURLEY/VITUNAC

UNITED STATES OF AMERICA     )
                             )
                             )
                             )
v.                           )
                             )
THOMAS NAROG,                )
GHANDI JABER,                )
MOHAMMED SAMHAN, et al.      )
                             )
        Defendants.          )
_____)

### GOVERNMENT'S RESPONSE TO THE STANDING DISCOVERY ORDER

The United States hereby files this response to the Standing Discovery Order. This response also complies with Local Rule 88.10 and Federal Rule of Criminal Procedure 16, and is numbered to correspond with Local Rule 88.10.

    A.   1.   An audio recording of statements made by defendant NAROG at a July 13, 2000 meeting with DEA investigators can be obtained by making arrangements with undersigned counsel. A total of 16 videotapes and 2 audiotapes are available for inspection.

2.  That portion of the written record containing the substance of any oral statements made by the defendants before or after arrest in response to interrogation by any person then known to the defendant to be a government agent will be provided as soon as they are finalized.

The following is the substance of oral statements made by the defendants before or after arrest in response to interrogation by any person then known to the defendant to be a government agent which the government intends to use at trial: After NAROG was arrested, he spoke with agents. NAROG claimed that what he did was completely legitimate. NAROG also claimed that he had only one domestic customer, Impact Sales, but that he had made several sales to them. When told that agents had videotaped several other distributions of pseudoephedrine to other individuals (not Impact Sales), NAROG had no explanation. After arrest, NAROG was asked why he lied during a July, 2000 meeting with investigators who were discussing his export license. At that meeting, NAROG stated Seaside Pharmaceuticals had no pseudoephedrine in its possession as of the July meeting. NAROG also stated that Unit 1352 was the only storage warehouse that Seaside Pharmaceuticals had. After arrest, NAROG admitted that Seaside Pharmaceuticals did have pseudoephedrine at the time of that interview and that Seaside Pharmaceuticals had other storage units. NAROG, through his attorney admitted that he had lied to investigators in that July, 2000 interview. When asked what was the purpose for a "legitimate pseudoephedrine distributor" to lie about having additional warehouses and to lie about having legitimate additional pseudoephedrine, NAROG could not provide an explanation.

Mohammed SAMHAN was arrested and asked if he had any pseudoephedrine in his home. SAMHAN told agents that he had two cardboard boxes in the house that contained pseudoephedrine. (The total weight of the loose pills in two boxes was approximately 144 pounds).

After Ghandi JABER was arrested he spoke to agents. He advised them that he was a permanent resident and that he moved to South Florida from Chicago several years ago. He advised that he had a passport and residence papers but

2

that they were in a safe deposit box belonging to his cousin, Samir Alsharif. JABER advised that he is the part owner of the Pita Inn with his cousin Alsharif. JABER also advised that he currently worked with his cousin Alsharif at the Kwik Stop located at 2200 Seacrest Boulevard, Delray Beach. He indicated that he made approximately $2,000 a month working at the Kwik Stop. JABER also stated that he paid $900 a month rent for his apartment and that his wife Amy Osman does not work. JABER stated that he has known NAROG for approximately 1 year and has worked for him for approximately 6 months. He met NAROG at the Kwik Stop where NAROG used to sell cigarettes. JABER advised that he made deliveries of medicine to customers of NAROG. JABER said he did not know NAROG's customers prior to any deliveries of medicine he made for NAROG. JABER also advised that he translated for NAROG because NAROG dealt with individuals from the Middle East who did not speak English well. JABER advised that NAROG paid him approximately $500 a month and that NAROG did trading overseas. JABER said he did not know what the medicine was being used for and that he only made deliveries of medicine to individuals that NAROG told him to. JABER also advised that he did not rent or own any other property.

When JABER and SAMHAN were arrested and being booked, JABER was asked if he knew SAMHAN. JABER stated that he had never seen SAMHAN before. SAMHAN stated that he had never seen JABER before.

3. No defendant testified before the Grand Jury.

4. The NCIC record of the defendants will be made available at the Discovery Conference.

5. Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained or belonging to the defendants may be inspected at a mutually convenient time at the Office of the United States Attorney, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, FL 33394. Some of the items available for inspection include photographs, videotapes, and other documentation. Items seized

        from NAROG's home, items seized from the Shurgard Warehouse where the pseudoephedrine was stored will be available for inspection. Please call the undersigned to set up a date and time that is convenient to all parties.

6. There were no physical or mental examinations or scientific tests or experiments made in connection with this case, with the exception of the DEA Laboratory analyzing a portion of the millions of pills seized, and a fingerprint analysis of some of the items seized from a search warrant at 704 Broughton Circle. A laboratory analysis of the substance seized in connection with this case will be made available to you upon receipt by this office. A copy of the fingerprint analysis will be made available at the Discovery Conference.

B. DEMAND FOR RECIPROCAL DISCOVERY: The United States requests the disclosure and production of materials enumerated as items 1, 2 and 3 of Section B of the Standing Discovery Order. This request is also made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

C. The government will disclose any information or material which may be favorable on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

D. The government will disclose any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of Giglio v. United States, 405 U.S. 150 (1972), or Napue v. Illinois, 360 U.S. 264 (1959).

E. The government will disclose any prior convictions of any alleged co-conspirator, accomplice or informant who will testify for the government at trial.

F. No defendant was identified in a lineup, show up, photo spread or similar identification proceedings.

G. The government has advised its agents and officers involved in this case to preserve all rough notes.

H. The government will timely advise the defendant of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine).

I. The defendants are not aggrieved persons, as defined in Title 18, United States Code, Section 2510(11), of any electronic surveillance.

J. The government has ordered transcribed the Grand Jury testimony of all witnesses who will testify for the government at the trial of this cause.

K. The government will, upon defense request, deliver to any laboratory presently registered with the Attorney General in compliance with 21 U.S.C. § 822 and § 823 and 21 C.F.R. 1301.13, a sufficient representative sample of the pseudoephedrine which is the subject of this indictment to allow independent chemical analysis of such sample.

L. If you wish to inspect the 4 vehicles (a Mercedes, a Buick, an Explorer and a Land Cruiser), used in the commission of the offense charged, please contact the undersigned.

M. A latent fingerprint found from items seized from the townhouse at 704 North Broughton Circle, Building 6, Boynton Beach, Florida has been identified as that of the co-defendant, Nabil Aquil. A copy of the latent fingerprint report will be made available at the Discovery Conference.

N. To date, the government has not received a request for disclosure of the subject-matter of expert testimony that the government reasonably expects to offer at trial.

O.  The government will make every possible effort in good faith to stipulate to all facts or points of law the truth and existence of which is not contested and the early resolution of which will expedite trial. These stipulations will be discussed at the discovery conference.

P.  At the discovery conference, the government will seek written stipulations to agreed facts in this case, to be signed by the defendant and defense counsel.

The government is aware of its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, Brady, Giglio, Napue, and the obligation to assure a fair trial.

In addition to the request made above by the government pursuant to both Section B of the Standing Discovery Order and Rule 16(b) of the Federal Rules of Criminal Procedure, in accordance with Rule 12.1 of the Federal Rules of Criminal Procedure, the government hereby demands Notice of Alibi defense; the approximate time, date, and place of the offense was:

Time:  See indictment
Date:  See indictment
Place: See indictment

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: [signature]
LAURENCE M. BARDFELD
Assistant U.S. Attorney
Federal Courthouse
500 East Broward Blvd., #700
Ft. Lauderdale, Florida  33394
(954) 356-7255, Fax: 356-7228
Fla. Bar No. 712450
E-Mail: Laurencebardfeld@justice.usdoj.gov